Only case we have this afternoon which is Wood v. Stephens. We'll hear first from Mr. Tyler. May it please the court. I am Jared Tyler along with Scott Sullivan. I represent the petitioner Jeffrey Lee Wood, the appellant before this court. This court granted a COA on two discrete issues. First is whether the trial court's reliance on its personal knowledge learned outside the proceeding to decide Mr. Wood's Eighth Amendment claim deprived Mr. Wood of a fair hearing before a fair tribunal as required by due process. And this is a question of Mr. Wood's entitlement to appellate relief. And the second issue is if so whether the case should be should be reassigned to a different district judge on remand. And this is the question of the form that appellate relief should take. I intend to address these issues in order. Mr. Wood filed a habeas corpus application below raising an Eighth Amendment claim that he's incompetent to be executed. The application alleged that Mr. Wood has a psychotic disorder called delusional disorder which is a psychiatric disorder within the DSM-IV in which a person holds non-bizarre delusions. Specifically the application alleged that Mr. Wood has a persecutory delusion concerning the reason for his conviction that operated to preclude his having a rational understanding of the connection between the crime for which he was convicted and his death sentence. The district court held an evidentiary hearing and at that hearing Mr. Wood primarily relied upon the testimony of neuropsychologist Dr. Michael Roman who opined that Mr. Wood has a delusional disorder that precludes his having a rational understanding of his death sentence. And the director at the hearing primarily relied upon the testimony of psychologist Dr. Mary Alice Conroy who testified contra Dr. Roman that Mr. Wood does not have delusional disorder and that he does have a rational understanding of his death sentence. Although other evidence was presented by the parties, the case presented a classic battle of the experts for the district court to resolve. It seems to me the parties are not disputing the standard that the district court has in its interpretation of Pinedi. Is that fair to say that the parties in agreement and are not disputing the district court's interpretation of Pinedi? I don't I don't believe that's that's in dispute in terms of Pinedi requiring a rational understanding of the connection between Pinedi with respect to our seniors on the Supreme Court was not the most clearly expressed standard and so I think the remand last year Fifth Circuit opinion made a good effort explaining what all that meant and you're not disputing it seems to me the legal standard that we have to apply insofar as the comprehension necessary for your client. Right I mean I think that as long as the as long as it can be said that the petitioner has a rational understanding of the death sentence that is the standard and I know it's vague but that is that is what Pinedi holds. Well counsel as I understand your argument the federal district court judge here that we're talking about brought to bear his own personal experiences many years and working with prisoner litigation and as I understand your argument it zeroed in on the under the Roman IV provisions which direct to the inquiry and to in to for the purposes of determining delusions and that implications for the disease to the cut subculture and that your argument is that they added that effectively brought to bear essentially evidence outside the record that you would do not have an essentially it that's correct yes well let me let me have a follow-on what I want you to try to help us with is is to where is the line between permissible and impermissible drawing up on the judge's experience let me give you not a hypothetical but a real-world situation and tell me that when I was a very young district judge a very new I was received an application for temporary injunction to urging that the NCAA had improperly suspended two prominent basketball players of a Texas A&M University and without a hearing just on the eve of the championship series and without notice or whatever and the applicant argument made to me was that on a 1983 suit for injunction denial of procedural due process I heard in about 20 minutes and an hour maybe and in the middle of another trial and junction matter and I ruled I said the question was and I said I have no difficulty in finding that an athletic scholarship is property and then you even don't notice end of story that wasn't meant to change NCAA rule now what the lawyers didn't know one of them later told me sometime later they didn't realize that I had attended law school on athletic scholarship did my experience of the student-athlete disqualify me for making that decision and by what metric would that be the case that's that's the problem you have that's the struggle we have so help us with that I think judges obviously have a lot of personal knowledge that's outside the scope of the proceeding the question and then you get more boards and knowledge than the question and any but a judge I think has the duty to set that personal knowledge aside in deciding a case yeah it's not the judge's possession of personal knowledge that's disqualifying okay and certainly in this case it's it's the reliance on but does that really answer it if the judge may well be able to put it aside but what about does it blend into the appearance of impropriety it could I think it well it depends upon the circumstances I mean this is you know lawyers make claims and judges rule on them and so I think to the extent that in this this case is an easy case because the judge told us I have this going to rely on it to decide this case there could be circumstances where that's less clear where the where the judge either doesn't announce the personal knowledge and maybe that's discovered through other means or the reliance is not expressed and there's got to be an inference as to you know whether that personal knowledge factored into the decision and in fact in Fox the city of West Palm Beach which is a case that we rely on in our brief that is not an express reliance case that is a case in which the judge at least by my reading of it the judge during a colloquy with the plaintiff's lawyer made various statements about the subject matter of the dispute it was a land dispute that the judge had personal knowledge of outside of the courtroom but what do you do a criminal offense lawyer appointed the United States District Court bench it doesn't happen that often but when it does happen that those criminal offense lawyer deals with day in day out with different species of practice and most of them are very sophisticated and they they ever they know that and they'll teach the younger lawyers this you don't don't believe everything your client tells you you know they have a very healthy skepticism that they bring to the mayor on that most these guys are guilty and the reality is it'll tell you that they gonna get a hard good defense but but nonetheless that's a reality in the world which they deal with in plea and that level of cynicism that's gone into the practice now you know you put him on the you should put him on the bench or her on the bench how do you put how do you put that that side I mean maybe that's an asset that one would argue that perhaps that's a real benefit they knows the real world and and I think that that's you know obviously that's that's there and I think I think judges are gonna have bring that knowledge to the bench but I do think that it's a it's a judicial duty to set it aside when they're deciding a case and now if there's a part some particular circumstances in the case that gives rise for somebody to think that that personal knowledge that the judge had played a role in the decision then that becomes you know a due process claim but of course they have to show that and Fox requires that the that the not be able to conclude that that personal knowledge was not a factor in the decision and I think if there's if there's no reason other than a party alleging that a judge had been a criminal defense lawyer in the past and therefore used that personal knowledge to rule I don't think that that is a claim that can possibly go anywhere well you see a pretty good preview on the kind of thing I'm not going there in terms of what do we have other than the courts reliance on personal knowledge well that's the issue on which COA was granted so I think that's really the the only issue that we're here for I mean I think I think there's lots of other errors in the district courts opinion why isn't it harmless error if it is error for him to have relied on yeah yeah it's a lot of other evidence that there was no such delusion that there was no such delusion right I think well I think that this court cannot strictly the court is not limited to consideration of the courts express reliance for one thing and so the I think the court has to look at the judge announced that had this personal knowledge and specifically about antisocial personality disorder and how it affects prisoners that the court really needs to look at the entire opinion to see what effect that that personal knowledge might have had on not just where the court sites its own experience literally but in terms of its other findings including that Mr. was feigning or malingering his beliefs about this delusion particularly because the evidentiary record below that both experts you know that that however the court came to that conclusion was not based on the actual expert testimony in the case because both our expert who of course believed that mr. would had had a delusion but also the director's expert testified that she did not see mr. wood feigning or malingering anything so the court is is has extended you know has gone beyond the expert testimony before it and I think has kind of was kind of serving itself as an expert at least that's that's if you look at the you know the findings that the court makes based on its personal knowledge it's the kind of findings or kind of testimony that an expert would give about how antisocial personality disorder affects prisoners council reading your brief it seems to me a number of specific sections of the opinion that you think this personal knowledge can be seen the discussion of personal knowledge but seems to me you were particularly concerned by a statement the district judge made that petitioner lives and has lived for almost a decade and a half in an environment in which any social conduct and thought processes are the norm it's this courts experience the belief and off he goes based on my experience on his experience and getting back to judge Higginbotham's point earlier it seems to me that your basic argument is that he used his personal knowledge to choose between which expert to believe but I have a difficult time saying where we would ever draw a line where personal experience is not maybe not as candidly as here but it's not having an impact I see a lot of witnesses who say exactly the same thing that this witness said taking what one expert said that seems more relevant to my understanding of what these people are really saying and believing I'm not sure how we separate that and if anything the decision you favor would might not have any effect on district judges have just cautioned them not to put all this in their opinions the next time and so where is I mean how does how do we distinguish between proper and improper use of one's base of knowledge and deciding who is more likely to be an accurate story well I think in this case it's particularly easy because of the kind of knowledge that the judge was expressing which is this is an easy case well the judge I mean the opinion is is is is really expressing expert testimony and Mr. Wood had no opportunity to challenge or rebut or respond to that evidence and this is particularly meaningful in this case because the judge was inappropriately applying the science so when the court you know kind of injects this issue of its own accord you know the dispute between the experts was not about whether Mr. how Mr. Woods antisocial personality disorder affected his you know the sincerity of his beliefs they both thought that he was sincere in his beliefs so the court is kind of supplying expert testimony and then on top of that is is misapplying it in order to discredit Dr. Roman in particular because when the DSM 4 talks about considering a person's subculture it's talking about comparing the belief and making sure that it's not a normal belief expressed in the subculture it's not talking about evaluating the subculture for whether it's full of deceitful manipulative people and therefore saying that the person that you're evaluating is insincere in their belief so it's it's a complete abuse of the science we had no opportunity it's a standard under Roman for that of subcultures was it violated here by your expert no in fact dr. Roman testified about I mean dr. Roman is the only person who that who diagnosed mr. were with antisocial personality disorder in the first place so he is considering it's kind of ironic that the court discredits him for not considering it when the director's expert didn't even diagnose him with antisocial personality disorder but yet she is credited so in that respect dr. Romans if I you know his diagnosis was actually more thorough but he got dinged for it but so I think he did consider at the hearing he testified that it was did it did not rule out delusional disorder which it doesn't in the DSM 4 and that he thought it was a collateral issue I mean he clearly believed that mr. wood was sincere in these beliefs and in terms of I think both experts also agreed that even though persecutory beliefs are not necessary can be common in prison that a prisoner can have a persecutory delusion about the manner by which they were convicted in other words there was also disagreement that that the culture is not determinative determinative of whether any given prisoners persecutory belief is a delusion so go back to the Genesis question about the harmless or not why is this prejudicial to you well it's prejudicial prejudicial because we had no opportunity to challenge the relevancy or the reliability challenge that what would you challenge if you just told you right he's counseled you he said you may know or may not know that for many many years I've worked with prisoner litigation etc etc so I'm not exactly a stranger to the phenomenon that a high percentage of the people there maintain their innocence in the face of some rather difficult evidence against them because it's not in their self-interest to always being there to admit it and that's just as it's common experience we told you that how would that have affected this case you would have said well he's not going to accept that he's gonna find a mistake that my client didn't accommodate the subculture and when you say that your answer that what they did and effectively deal with it well pertinence yes but I think it goes beyond it goes beyond just the dr. Roman's lack of consideration of the subculture I think that the district court's personal knowledge is infecting its entire processing of the evidence for example that at one point it concludes that mr. would never expressed conspiratorial beliefs until 2009 or there's no evidence that he did well if the court simply looks at dr. Roman's 1996 report it will see that he that that report is full of mr. Woods conspiratorial assertions unusual for judge in a non two-page opinion not that there are many examples of that perhaps to make some misstatements it seems to me this is a different issue one is personal knowledge one is not quite understanding the record correctly seems me you're now moving into and you're saying that one big error infected all the rest of this that's kind of a leap it seems to me what you're talking about now is how he misunderstood the evidence and that would be relevant for other purposes I think that it's more than a misunderstanding because I think the courts really presumption about mr. Woods highly manipulative antisocial personality which was not something that there was expert testimony about colored the way that it viewed all of the evidence in the proceeding and I think under Fox that that's relevant that the court has to look at the entire decision in order to see whether the courts personal knowledge and it's it's expertise it's about social personality disorder how it's infecting were you were you the Woods counsel during this hearing yes I was I was weren't you prepared and aware that of what doctors Connell and Bailey were going to testify to and if you if you were well how would you be more prepared if you say you you you were prejudiced because you couldn't rebut what the judge said his experience showed but you were prepared to try to rebut what these witnesses said weren't you or were you not no yes but the witnesses did not say what the judge said so that's that therein lies the problem of how can we rebut whether mr. what is malingering his beliefs when the director's expert is not claiming that mr. what is malingering his beliefs the only you know person to say that is is the district court judge in its opinion the director's expert did not expressly testify that she did not see mr. what feigning or malingering what you're implying is that he should be recused because he he displayed this personal knowledge that was very critical in this case yes unfortunately he didn't that that information was not announced until the court issued its opinion disposing of the case and issuing its judgment perhaps if the judge had said something then what what would you do with a judge like judge Higginbotham who after the parties found out he had he had played tennis and whatever whatever else he did an athletic scholarship at the at law school during law school I don't think I would have known to have we all we all bring these these personal knowledge to and we we have we absolutely have to I mean we practice a judge couldn't try an absolute I do think it judges that kind of personal knowledge is far removed from the kind of personal knowledge that this judge was expressing like it which like I said was basically kind of expert testimony about prisoners with antisocial personality disorder and how they behave I don't think most judges consider that within their you know what's your position if the judge literally were an expert in this area and went to law school and became a judge and he has this wrote his doctoral dissertation on whatever the issue is in the case does that person have to recuse are you saying he has to leave that at the door into the courtroom it seems to me that what many would see as an advantage you're saying is actually a disqualification it's not no I don't think it's a disqualification just because a judge possesses personal knowledge I think that a although it might it might depend I mean I've certainly you know in like TV United States the Supreme Court talks about bias and that it having an extra it must have an extra judicial source and so clearly that is there's an argument that if a judge does have certain personal knowledge that that might be recusable but I don't think just in general that the the possession of personal knowledge alone is recusable it's the acting on the personal knowledge and the and the refraining from confining oneself to the record I have is it so much distance between the general influence of background on the judges approach to cases and and bias it's hard to get a handle around how we administer rule as a practicing lawyer you know and I knew and my judges and I knew in particular they all have with their backgrounds in general I knew that guy used to try criminal cases and he was tough I knew that that judge was very tough and sentencing I knew this judge doubted either you didn't you know wouldn't approve any judgment civil judgment over $50,000 you know keeps the book on these guys and it's their background and their attitudes and so forth and you just aware of it no I've never heard anybody suggest that they recuse themselves because you you know you're not as generous as a judge down the hall no and I you understand what I'm saying yes sure I'm out of time okay well you have you'll have a you reserved eight minutes on rebuttal and we'll give you whatever time you need mr. Raul how I'm sorry I'm gonna put my glasses on you're gonna bring us the light on this I will do my best I would like to start by saying that the judge Higginbotham you'd ask where is the line and in light of key the court said the Supreme Court said that it's does this reliance because we're reliance on an extrajudicial source of knowledge alone is not enough to violate due process it has to demonstrate such a high degree of favoritism or antagonism as to make fair judgment impossible and I think there's a there are contrasting cases here that I think demonstrate this line well and the distinction that this of the improper source of extrajudicial knowledge it's a distinction between knowledge that is purely personal in its nature and knowledge that has been acquired in the judicial capacity so there's a case in United States versus Toronto that was decided by this court in which a district judge was faced with a plea agreement of a volume drug trafficker and that the court expressed during the hearing I believe that I'm familiar with these plea agreements with these kinds of guys I don't think they're an effective deterrent and therefore it's my intent when these guys come through here that I'm gonna deal with them as sternly as possible and naturally the defendant complained and moved to disqualify in the court said group this is an extrajudicial source of knowledge that the judge is citing there but it's one that was acquired in judicial capacity well all different to the high court so you started you appointed judge afresh then everything he learns outside of the record after that's okay but what he knew as a lawyer for the preceding 35 years or so it's gonna be it can't draw upon in other words you have that acquired experience acquired judicially well I don't know I don't know sure how this judge acquired that knowledge working with me may have been a magistrate judge I don't know remember well here's a magistrate judge he may have been working with present litigation for 15 years and that'll be judicially well I think this is different though than for example the Fox case which is cited in the court's order granting the COA and that mr. wood relies on in which the dispute was about property value and this was before the fifth circuit when Florida was still of the Fifth Circuit and the judge is dealing with a proper dispute about land swamp land that was being drained and one side said it's worth this and the other side it's not worth that and the judge says well I'm familiar with that that region I'm familiar with that property and based on my personal knowledge I know that it's not gonna be worth what you think it is after you drain that swamp and therefore I'm gonna side with the people who think it's worth less and that's purely personal that's something that that's knowledge of the judge relied on it was outside but you're describing an awareness of a fact or a specific circumstance as distinguished from an attitude or a mindset or a viewpoint that has been colored and as it will inevitably in anyone's background and that's the there's a large difference between those two in other words if I got an expert if it's supposed to district judges up he's got a graduate degree in chemistry and the expert says X and he says it's a nonsense you know you don't even know your valences whatever but he I can see where the if he draws on very specific factual information that you get something akin to bringing in testimony into the courtroom effectively that's unexamined is that a meaningful distinction between background that's in coloration versus a specific fact no I mean I think but didn't it then they didn't come to bear on a very specific determination here of the of the validity of that of testimony that he thought did not draw properly upon the subculture so to answer your question no what it comes down to is how broadly these remarks are read and as you as your honor said it was specific to these remarks were specific to dr. Roman's expert testimony and even more specific than that to his failure to this is the heading in the in the petitioner in the opinion is failure to consider petitioner subculture so the court brings to bear this experience in that specific observation and in its decision to disregard or discredit dr. Roman's testimony because he did not adhere to the DSM's definition of delusion let me give you another example of moving to get back to athletics and avoid and using a real athlete justice Byron white he was playing pro football as a while it was Yale Law School now suppose while he's sitting on the court the case comes to the High Court that that involves concussions and injuries and it comes up in some variety of procedure to the Supreme Court what does he do with his experiences but I don't think it's reasonable to expect a judge to not bring to bear his or her life experiences and in fact let me ask some specific views about concussions or not the question then is does that rise to a level that because courts are to presume we operate from a presumption that judges are impartial so that's an important that presumption plays an important role because we want to we want judges to bring there that's why you're you know that's why we have people who are serving as judges we want them to bring their life experiences to bear so you your view is it as long as it's not an adjudicative factual issue in the case the judge's personal knowledge doesn't disqualify right it doesn't rise to the level that's just like the old distinction between adjudicative facts and legislative facts is that I think that that's that's certainly one way to look at it and it's at the end of the day it doesn't it doesn't rise to the level of a due process violation unless it renders the entire judgment that the judge's entire ability to render a fair judgment impossible to what extent that we draw upon the rights of judges to to draw upon common knowledge outside the record itself in the writing of opinions or and take judicial notice of if you will well the the judicial notice standard is that's the sort of thing where it's a is this something that's known in the common knowledge in this particular the judge's reliance here I think it's probably more specific than what we don't argue that what he his observations here fall within something that's judicially noticeable so we'll concede that but even so it still doesn't rise to the level of a due process violation because it's so specific that's that's the question here is how broadly do you read these comments as a sweeping generalization and prejudgment of all capital petitioners in his court or specifically related to dr. Roman's testimony and when it's considered in context in the scope of this 92 page opinion it is it's it's very specific in its context and I should note too with regard to dr. Roman that judge didn't the judge say that one of the things that animated his decision was his experience here very specific experience his decision to discredit yes yes exactly that was the issue well that's not the only I mean that there's a whole record let's just stay with that issue for a moment and we deal with whether we assume that's error whether it's harmless or not and it view the whole okay but was that error or not that's what I'm saying that's my question no another aspect of this is that dr. Roman's the courts rejection of dr. Roman's testimony is based on an objectively verifiable fact and that is that dr. Roman did not account for the petitioner subculture when he reached his conclusion and so but the consequence of that turns on whether one appreciates the fact that's that there is a such a subculture that's meaningful here and that subculture there is he says is that these guys are there's no there's no delusions out measured by the culture in which they're in because they're all a saying that right there was testimony from both experts on on right on on how reliable his claim was on the prevalence of these sorts of thing of these sorts of beliefs and that persecutory beliefs are common we heard that from dr. Conroy in the hearing so there's a source for that decision and the failure to comply with the DSM is irrespective of the judges attitudes towards prisoners is something that is objectively verifiable think a moment about what our task is we have to formulate some kind of a measurement here of some metric and it's not going to be looked at solely from the standpoint of a judge in a particular judge is going to look at this thing about you know should I recuse me in these cases and if I have all this background and this is a case of Charles upon that at the court saying that I should get out of these cases if we muddy that water that's part of the difficulty of saying what very much in this maybe we shouldn't say very much right and that and that's something we pointed out in our briefs is if the court reads these remarks as as broadly as as mr. wood contends they should be read then certainly judge Garst that's going to be Roman numeral one in every motion to recuse filed in judge Garcia's court by a capital petitioner and not to mention it any district court who has been any district judge has been on the bench for a while has had I'm sure lots of these habeas petitions come before them and they naturally just by the sheer volume I mean each of these courts hire staffs of people to to handle this sort of thing and we call it experience we usually value it right yes what you're valuing is a mindset and understanding the appreciation of of issues and circumstance that's correct I think that's another way to look at this I think for all the benefits that it provides there's something very specific that petitioners complaining about this is a choice that had to be made of whether the petitioner was delusional in the sense of relevant under Panetti and you had competing statements by experts on that point and it seems to me at least two ways to read this opinion one is that perhaps he's getting the district judge a little off subject when he's talking about antisocial personality disorder and that's a lot of this section that I'm looking at in his opinion but putting that aside to the extent that is the right way to be analyzing this it seems to me the district judge's opinion based on on I don't see the language here the vast majority of Texas prison inmates whom I have seen have the following characteristics and he used those characteristics that drew from these other cases other people he had seen on paper or saw in his courtroom to say that in this case not because of what I have seen in Mr. Wood but just because law of averages these people usually have these mindsets and so I'm choosing Conroy over Roman that seems to me at least is a somewhat different category than just saying it's useful to have all this experience he's actually making his fact-finding based on in a dispute between experts based on his own expert well-informed opinion as opposed to just what's in the case and that is the way it's being argued to us that when you're it's one thing to bring experiences in but he is saying sort of independently of what I see in Mr. Wood most of these people I don't he uses that phrase but something like that fit the definition that dr. Conroy is using and don't fit the definition that dr. Roman is using but would might have fit that definition and so he needs to be those two witnesses and not choosing on the basis of what most people have come before him have said or I have experienced well I I think this raises a very important point here and that's this that the yes this this comes into the judges weighing of the experts opinions and the judges choice to credit one experts delusional diet you know assessment of his claim of delusion over another but it's important to remember what the district judge is attempting to answer the question is not whether or not mr. wood suffers from a diagnosis psychotic disorder the question is not is whether he is competent to be executed and and that so the judges decision regarding you know the credibility of the delusional diagnosis is only a component of that analysis because it and so that's what you're arguing harmless is now right you know alternatively it's harmless yes and there are a couple of reasons why it's harmless but just on this report we lead into harmlessness it seems to me that the issue in this case is mr. wood delusional not whether most such inmates are delusional or whether it's common for such inmates to have these views and they're really not delusional is whether he is delusional and he chooses between experts so I mean you're going down the path and you get to harmless error at some point but sort of follow that I think you were trying to describe to me why I should not be concerned about that about the weight that he was putting on judge Garcia was putting on his own what other inmates he had seen actually their conditions were so explain to me why that's not really a concern in this case that he was letting the evidence from other cases tell him who's right in this well again because it's consistent with the the DSM itself again it goes back to this question of the judge brings to bear this experience and notes his experience with other other prisoners to show to say that woods claims here are consistent with his subculture of prisoners and I'm familiar with them because I've dealt with so many of them meaning that he would never find any inmate to be delusional that so long as the state had an expert to says he was not delusional you'd have this array of prior expenditure appearances judge Garcia and he would always end up saying the person's not delusional it seems to me we need to be looking at the evidence in the case and not the track record of other inmates in his in his court well he would not necessarily reach that conclusion that the problem here is that dr. Roman's testimony did not account for that or at the very least that account for the subculture right what about opposing counsel when he was up here said nay nay he did account for it but in a different way were you picking up on what his point was he said that dr. Roman did fully account for that but just not in the way the judge Garcia was looking I guess I mean the testimony speaks for itself but I mean he minimizes the importance of the subculture basically what dr. Roman testifies is that yes persecutory he agrees that persecutory beliefs like this are common in prison but that even so this still rises to a level that renders him delusional but there's not the sorts of specifics that dr. Conroy who's a forensic psychologist testified to it's also I would also point out that dr. Roman's tested this is just Garcia is not the only district judge to discredit dr. Roman's testimony in this specific arena judge Rosenthal in Eldridge in the southern district in Eldridge versus Thaler also had dr. Roman in her court and same sort of thing where dr. Roman is testifying saying that that you know the petitioner is delusional and same sort of thing that the court says I don't find him credible in fact at least one of my other colleagues has had the same problem with this testimony and so it's not this is not should consider dr. Garcia's past experiences with inmates generally and dr. Roman's experiences with other federal judges all to affirm this case well it just shows that I mean it there are problems with dr. Roman's testimony there are problems with his theories and and that's why the judge didn't what you're saying is it didn't nearly need to draw upon his personal view right and that goes back to the idea that but the problem with that is he did yes and again that so this again raises a question of does this let me ask you another question that very common thing before that sentencing guidelines of course we fraction lawyers were very careful to keep the book on the trial judges or what their patterns of sentencing were and so forth and one of the statements that were made not uncommonly but more than one sentencing judge I had to do with this context of marijuana the Defense Council put on evidence in sentencing phase that marijuana is is really harmless more so and hurtful when drinking beer and maybe shouldn't do that either but it's not that other and then what happened for the sentencing to get through without sensing judge said well I appreciate that argument counsel but in my view marijuana is a pathway to heroin and more severe addictions and then imposes sentences as the trial judge in that circumstance that I guess may fall in the judicial experience category I don't know how you would in the course of judicial experience other than just sentencing people and we have seen enough probation cases that's would be permissible because it's judicial experience that that is the distinction that I mentioned earlier and I think that's what it comes from we can't expect judges not only to I mean to to forget their life experiences but also to forget what they they know as judges and again the Defense Council puts on an expert witnesses and they say that the drug is not addictive and it's not necessarily it had not been demonstrated the literature by any scientific study that that's credible that it is a pathway drug to some people who smoke marijuana ended up with meth or something else yes but it's not that's because of other circumstance than just being a pathway drug there's not a pathway drug and they put on the expert testimony to do that and he says well that's not my experience I say these kids all the time they're smoking pot and then next time I see them they it's unrebutted expert testimony and that that would be different than what we have here we here we have dueling experts he's got a okay the state counters said it is but there's not a pathway to it is not a pathway I would say there's a pathway to heroin and the defense says it is so you got conflicting viewpoints until he chooses a one that conforms his testimony to his experience that's certainly not impermissible is it no I don't think it's unreasonable to for a judge relying on that experience to to I mean judge necessarily has to rely on his experience or her experience to to make these sorts of decisions if that's acceptable where where did it become unacceptable in your view I mean it's it this is not an easy line to draw but I mean I'm asking you right but it's it has to events such a high degree of favoritism that it would be impossible that those are the words of the Supreme Court is it would be impossible for the judge to make the decision so that it necessarily is a case-by-case evaluation in looking at the totality of the circumstances but in any event the even if we decide that the court decides that these were improper remarks there's no harm here partly because he cannot over his Ford claim itself it is meritless and he cannot overcome at this relitigation bar which is another aspect to this case which makes this one a procedurally tricky one even by standards but this hearing in which the district court hearing at the district court held never should have occurred in the first place and that's some of the irony here is that mr. wood complains that he was deprived of due process by the district court when in fact he actually got more process than he was due because the district court never applied 2254 D to his claim so his claim was adjudicated on the merits in the state court and was rejected at the threshold stage article 4605 of the Texas Code of Criminal Procedure requires that you make a threshold showing of your incompetency before an attorney will be appointed for you and threshold showing made in this case no and that's do you think that the court was an error in appointing proceeding under McFarland yes you so argue but he rejected that right because the district courts reasoning for concluding that he was entitled to an attorney in the that the underlying procedure was unconstitutional yes but this court's already approved of the underlying procedure in Patterson vs. Drecke which is one of the cases cited in our in our briefing so even if there is a due process violation he still has to contend with at this re-litigation bar which this court has already concluded he can't do by rejecting his COA him at COA on that very question so the courts order granting a COA here limited its its order to just this question of judicial extrajudicial knowledge My only suggestion was that the district court went a long way with this petitioner along the way down the path we were with him giving him a hearing and hearing it and so forth whatever value that is he wrote a what a six or seven page opinion or something right yeah I mean it so at the end of the day the court shouldn't have but it did and we do have a 92 page opinion disposing of this claim and if we do look at it de novo and and just get to the propriety of the district courts decision here we come back to what is the Ford standard and again it's not that someone be diagnosed as delusional it is does this person lack a rational factual understanding of the crime they were convicted of their impending death sentence and the retributive connection between the two so the record as it's created in district court and certainly the state court record if we just look at it from the threshold stage but even if we take the totality of every all of the evidence that was input in the district court it doesn't rise to that level it does not prove that he lacks a factual and rational understanding we know that because he even if he suffers from it even if we take is true that he has delusional disorder he still understands that he's faced that he was convicted of a crime under the law of parties and he disagrees with that he thinks it's morally wrong to for someone to be subject to the death sentence if they weren't the trigger man but all that demonstrates is that he indeed understands the scenario this case when the petition was filed in the United I'm hearing it at that juncture had the state of any engaged experts to examine the accused no experts were not engaged until after the district court stayed the execute I know that with the state and did you did the state have this prisoner examined by your own prison psychiatrist whatever and if so at what stage of the proceedings not to my knowledge I don't believe that happened it did not happen at that threshold stage because all of this came at the eleventh hour his state court petition was filed I believe six days before his execution and and then it went on to the district court pretty quickly after that what about in those and they I don't remember what this state court of criminal appeals did with us before you they went to the through the state processes correct what was the ruling of the Texas Court of Criminal Appeals the Texas Court of Criminal Appeals actually is did not rule on it because it's the petition is the Ford petition is filed you know the 20-day showing I'm sorry because it took the position that you had made a substantial showing well it didn't even reach the merits of that the only it was the state habeas district court who concluded he had not made a substantial showing he attempted to appeal to the CCA and they said we're prohibited by statute from considering your appeal because you weren't talented in the 20-day period yeah but so if if I may just briefly conclude the district courts remarks don't rise to the level of a due process violation but even if they do the error is not harmful both under if under the EDPA re-litigation bar or if the court Ford processes you and you engage experts to examine the current mental status of the prisoner I'm not aware of one and there's nothing in the record indicating that I'm certainly aware that there are times when the state will have an individual assessed prior in anticipation of a forward claim there's nothing to indicate in the record that that occurred here at least not that I'm and I don't know if there's a protocol for that I and I know it's happened before but I would ask that the firm the judgment below thank you miss how mr. Tyler yes oh no I'm sorry mr. mr. Sullivan let me start by putting one thing to rest both therapists psychiatrists psychologists whatever you want to call agreed malingering was not an issue he was not malingering said both experts one of the words and I can't remember who said we need to we need a place where judges gone over that rope and is starting to say you're out you've gone over that rope we got to pull you out of the ballgame and I think one of the words he used was antagonism when he starts to become antagonistic and as I look back on the hearing as a whole then incidentally the way we split this thing up I did the whole hearing and he did me the research as we went and if you if when you do go back to the record it was a it wasn't a pleasant place to be for three days this was a hot topic I would say judge Garcia left his shoes at the door like they did the old wrestlers history he left everything he had out there and it became that way throughout and then it finally culminates in this issue at the end where we end up making an allegation that as he writes what he calls his synthesis I would call I've never heard that word before I usually call it his argument or his application of the law to the facts he starts this weaving in and out he gives some law for a while and then he weaves back to his own personal opinion and what I've seen and I've seen this before okay this court has seen thousands of these things before we were never allowed to address those things with evidence and then he'd swing back to the law for a while and then he'd swing back into a personal observation that we never even knew we were going to have to debate either way we just had to remain faithful to the system because we can't argue those things that we don't have evidence of so we were we're left with literally no ammo it does seem to me that amongst it the hardest thing about it when you get up here and say that about a judge that he was antagonistic let me make it abundantly clear I am very beholden to judge Garcia and he went on don't get me wrong he went throttled up this whole hearing this was three of my hardest days in the practice of law I was exhausted I was beaten I got every question in the book but it was fun and one of the things I think that that we might think is that this is in a win-lose case because what judge Garcia did right off the bat was win we'll see what you're not right off the bat but in his opinion he is telling us I already know these things through my own experiences he tells this court the facts it needs to make the conclusion another judge just may have forgotten to he didn't he put him out there for us to judge for us to weigh in and say should you stay or should you go and and I submit there's some case law out there that we said where we state it's for the trial judges sake that we do this and not to use a football analogy but when your great player is hurt and you don't have to win that game to go to the next level you're pulling him out of the game there are good reasons to take a man out of the game and that's one of those situations right here is that because he is exposed to us a heavy heavy opinion on his own thousands of cases and by the way if you are in South Texas or West Texas you do get a lot of cases they they have to operate at such a high volume they can get a big picture they get the big picture they got it but isn't your position the magnitude of the caseload there really is as I guess opposing counsel said it seems to me that for every case with any issue like this in it if you're successful here judge Garcia can't sit on those cases he may not articulate the reasoning next time but that's still in his head doesn't that become a disqualification I'm not saying that therefore means you're wrong but isn't that the effect of it? I think the only thing I can say to that is I thank God for the oath. He took an oath and so he's got to bring those things to us I agree your honor we might never know that he felt that way we may even have to battle through different lines to find it out. Well if you can't sit on this case because of all that experience it seems to me all the other things that he has experienced with that will impact his decision-making are equally subject to your argument. I think if let me try to make sure I understand the question your honor in other words he's gonna have strong opinions on other things other than just this. He's hearing thousands of cases looking people in the eye and not believing them or believing them and he comes up with all these rules of thumb that we all do when we see enough of one thing and you're saying that's disqualifying. Yes and I think that's where we have to look for the antagonism when he starts to become antagonistic about it. Also they make one comment but I think it's the wrong place a judge will say something loosely as he's sentenced a he feels a certain way no he just may be giving an afterthought so we've got to try to work through all that as we approach it when we start to see that and we know he's gone over I would submit your honor with the attacks become antagonistic or in today's Google world like a rant and that's what when you go on Google when you go on these websites young kids like to they call it a rant it gets into sports a lot too when coach has a meltdown he has a rant and I think that's the line we're saying he crossed he but the beautiful thing about it is and this is what I like so much about Judge Garcia it's a hard day for me because he's one of my judges I dig because you're gonna get in there and he's gonna you're gonna leave your shoes at the door if you last three days in there but Judge Southwick you know where he stands right where he stands on this case is I boy you can total up all his experiences with these guys on death row guys that are having to go back to Mexico all the border judges got the same problem they know what they're going to do they're famous last line don't come back to this country because they know what they're going to try to do I think I see a red light on one of my own thank you your honor. Thank you Mr. Sullivan. The case will be submitted and the court will adjourn.